IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                           Case Nos.:  4:09cr34/RH/CAS
                                          4:10cv565/RH/CAS

TYRUN LAYVON COOK

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's second amended motion to
vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 74).  The
Government filed a response (doc. 77) and Defendant has filed a reply (doc. 78).  The
case was referred to the undersigned for the issuance of all preliminary orders and any
recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc.
R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  The court held an
evidentiary hearing in this case on January 16, 2014.  Defendant submitted a post-
hearing memorandum of law (doc. 104), to which the Government responded (doc.
106).  After a careful review of the record and the arguments presented, it is the opinion
of the undersigned that the § 2255 motion should be granted as to Defendant's claim
that counsel was constitutionally ineffective for his failure to file an appeal and
Defendant should be permitted to take a belated appeal, and that the remaining claim
should be dismissed without prejudice pending the outcome of this appeal.

### PROCEDURAL BACKGROUND

Defendant was charged in a four count indictment with conspiracy to possess
with intent to distribute 50 grams of cocaine base ("Count One") and three counts of
distribution of five (5) grams or more of cocaine base on a date certain ("Count Two,"
"Count Three," and "Count Four") (doc. 1).  Co-defendant James Lamont King was

charge in Counts One and Three and pleaded guilty to both counts (docs. 1, 25, 30).
Attorney Armand Garcia was appointed to represent Defendant Cook (doc. 11).  On
August 13, 2009, Defendant pleaded guilty to all four counts (docs 33–36, 100).

The Presentence Investigation Report ("PSR") was disclosed to the defense on
September 24, 2009.  Defendant was held accountable for 1,625.9 grams of cocaine
base for a base offense level of 36 (PSR ¶ 36).  He received two level adjustments for
possession of a dangerous weapon and for his leadership role in the offense, and his
total offense level was 40 (PSR ¶¶ 31, 33, 38). Defendant had a criminal history
category of III, and the applicable guidelines ranges would have been 360 months to life
imprisonment (PSR ¶ 62).  However, because the maximum statutorily authorized
penalty for Counts Two, Three and Four was forty (40) years pursuant to 21 U.S.C. §
841(b)(1)(B), the guidelines range became 360 to 480 months (PSR ¶¶ 61, 62).

Sentencing was conducted on January 13, 2010.  At sentencing, counsel argued
that a criminal history category of III overstated the seriousness of Defendant's criminal
history, objected to the quantity of drugs attributable to Defendant, the leadership
adjustment and the lack of acceptance of responsibility adjustment, and noted that
Defendant denied carrying a weapon during his narcotics transactions or having any
role in firearm sales (doc. 101 at 3–9).  Counsel also objected to the disparate treatment
of crack and powder cocaine, an objection that the court promptly overruled (*id*. at 11).
The Government called several witnesses to support its position: Travis Tise, who had
purchased drugs from Defendant, Robert Henry Glanton, who had sold Defendant
drugs and observed Defendant's involvement in gun sales; James King, who had
purchased crack from Defendant and observed Defendant's purchases of cocaine
powder from others (*id*. at 12–53).  Based on the testimony, the court found Defendant
was responsible for a lesser quantity of drugs, resulting in a base offense level of 34 (*id*.
at 74–75).  It sustained the objection to the leadership adjustment, although finding it to
be a close question (*id*. at 76–82), overruled the objection to the gun enhancement (*id*.
at 82–83); and sustained the objection to the failure to award credit for Defendant's
acceptance of responsibility (*id*. at 97–98).  Defendant's total offense level was 33, and

thus the applicable guidelines range was 168 to 210 months.  The court sentenced him at the low end of this range to a term of 168 months imprisonment to be followed by five years of supervised release (docs. 60, 61, 101 at 102).[1] Defendant was advised of his appellate rights (doc. 101 at 104), but he did not appeal.

Defendant timely filed his motion to vacate on December 14, 2010 (doc. 70).  He was twice required to amend to use the proper form and format (docs. 71, 73) and his second amended motion that is currently pending before the court (doc. 74).   In this motion, Defendant raises two grounds for relief.  First he contends that counsel was ineffective for his failure to file an appeal, and second he asserts that his sentence violated the Sixth Amendment.  The Government opposes the motion in its entirety.  Due to the parties' conflicting positions on factual issues pertinent to Defendant's claim that he requested that counsel file an appeal, the court held an evidentiary hearing on this issue.

## LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

---

[1]After Defendant filed the instant § 2255 motion, his sentence was further reduced to 135 months imprisonment (*see* doc. 81).

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  <u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  <u>Nyhuis</u>, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  <u>Sanders v. United States</u>, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  <u>Lynn</u>, 365 F.3d at 1234–35; <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998);  <u>McKay v. United States</u>, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."  <u>Lynn</u>, 365 F.3d at 1232 n. 14 (quoting <u>Mills</u>, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  <u>Lynn</u>, 365 F.3d at 1234; <u>Bousley</u>, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  <u>Lynn</u>, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See* <u>Nyhuis</u>, 211 F.3d at 1344.

<u>Ground One: Failure to File an Appeal</u>

<u>Defendant's Claim and Applicable Law</u>

As his first ground for relief, Defendant contends that counsel was constitutionally ineffective because he failed to file an appeal in his behalf after being instructed to do so.

The issue of counsel's duty and obligation with respect to his client's right to appeal has been well litigated.  The Supreme Court has unequivocally stated that if a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable.  <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (citing <u>Rodriguez v. United States</u>, 395 U.S. 327 (1969); <u>Peguero v. United States</u>, 526 U.S. 23, 28 (1999)).  Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal.  *Id.* at 483; <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 792 (11th Cir. 2005);  <u>Cunningham v. United States</u>, 378 F. App'x 955, 957 (11th Cir. 2010).

However, in cases where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, counsel's performance can still be constitutionally deficient if counsel failed in his or her duty to consult with the defendant regarding an appeal.  <u>Flores-Ortega</u>, 528 U.S. at 478.  Consultation involves "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  *Id.*  If counsel has consulted with the defendant, of course, the question of deficient performance is easily answered; Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.  *Id.*  In this case, consultation is not at issue.  Rather, Defendant asserts that he expressly instructed counsel to file an appeal and counsel failed to follow this instruction.

Appended to the Government's response to Defendant's § 2255 motion is what purports to be a copy of a letter dated January 15, 2010, from Defendant's attorney, Armando Garcia.  Garcia's letter indicates that it follows a meeting between the two men on the same date and states "You have decided not to appeal the sentence in your

case.  Accordingly, I will not file a Notice of Appeal" (doc. 77-1).  In the same letter, counsel advises that co-defendant James King had received an 8 month sentence with four months home detention and four years of supervised release (*id.*).  In his reply to the Government's response, Defendant submitted a sworn declaration in which he asserts, under penalty of perjury, that he instructed counsel to file an appeal, that he never advised counsel he did not want to appeal, and that he never received counsel's January 15, 2010 letter (doc. 78 at 5).  In light of the contradictions contained within the record, Defendant was directed to file a supplemental response setting forth in as much detail as possible and under penalty of perjury all discussions and attempted discussions he had with counsel regarding an appeal and any witnesses to these conversations (doc. 83).  Defendant complied, and his sworn affidavit indicated that (1) he told counsel on January 13, 2010, when he was leaving the courtroom that he wanted to file an appeal because he thought he should have received a lower sentence; (2) that he reiterated his desire to appeal when counsel visited him on January 15, 2010 at the Tallahassee Federal Detention Center; and (3) that he did not receive counsel's letter of January 15, 2010, or any other letter from counsel after that date (doc. 84 at 18-19).[2]

The Evidentiary Hearing

The undersigned held an evidentiary hearing on January 16, 2014.  The parties presented the testimony of Defendant and his former attorney, Armando Garcia.

Defendant Tyrun Lavon Cook was the first to testify.  Defendant testified that he recalled the objections that his appointed counsel, Armando Garcia, made at sentencing to the drug weight and the propriety of the firearm enhancement.  Although he admitted that his sentence was less than what he was originally facing according to the calculations in the PSR, Defendant Cook said that he was not happy about the sentence because he "did not sell the amount of drugs he got sentenced to."   When asked what he wanted to appeal, he indicated that he wanted to appeal "his sentence

---

[2]Defendant's affidavit was submitted as an attachment as a motion to supplement, which motion was denied (doc. 91).

and the drug amount." Defendant recalled being advised by the court about the 14-day period for filing an appeal and further testified that he talked to Garcia immediately after sentencing about his dissatisfaction with his sentence and told Garcia that he wanted to appeal.

Defendant testified that a "couple days" after sentencing, Garcia came to the Federal Detention Center in Tallahassee where Defendant was then housed and the two men discussed Defendant's case. At that time, Cook again told Garcia that he wanted to appeal. Defendant stated that he relied upon Garcia to file the notice of appeal and believed that Garcia would do so.

Defendant apparently remained at FDC Tallahassee for some time after his January sentencing. He said that he was transferred to (FCC) Coleman on August 22, 2010. It was at some point after this transfer, perhaps in September or October, that Defendant said that he "learned" that there had been no appeal. Upon further questioning by counsel and the court it appears that Defendant actually meant that he "concluded" that no appeal had been filed. Defendant testified that no one specifically informed him that there had not been an appeal, but that he simply had not heard anything about his appeal from either Garcia or the Government, and thus he reached the conclusion that Garcia had not filed an appeal merely due to the passage of time. He did not indicate that he made any attempt to contact either the district or appellate court to confirm.

With respect to Garcia's letter of January 15, 2010, Defendant first testified that Garcia had not mailed the letter, but later clarified that he did not know that, but knew only that he had never received it. Defendant stated unequivocally that the first time he saw the letter was as the attachment to the Government's response (doc. 77). Defendant testified that if he had received the letter he would have advised Garcia that he was mistaken and that Defendant wanted him to file an appeal.

On cross-examination, Defendant admitted that Garcia had successfully argued for a lesser sentence than sentence projected in the PSR. However, he insisted that

despite having received the 168 month sentence, he still wanted to appeal, and he reiterated that he did not receive Garcia's January 15, 2010, letter.

The Government's attorney asked Defendant how many times he had called Garcia after sentencing. Defendant said that he had called counsel "numerous" times, and noted that he had even written to the judge to complaint that he was unable to get in contact with Garcia.

Cook's October 4, 2010, letter to the court was docketed as an exhibit to the district court's "Notice of Ex Parte Communication" (doc. 69). In Defendant's letter he stated that he had requested that Garcia send him his legal materials both verbally and in writing. He explained that Garcia had responded via written correspondence telling Defendant that he would not send any of the materials while Defendant was at FDC Tallahassee but that he would send them when Cook was settled at his designated facility. Defendant complained that he had been at Coleman for a month but had not been able to contact Garcia in order to obtain his documents. The court took no action on the letter, finding that there was no indication that Garcia would not provide the documents on his own. Defendant testified that at the time he sent that letter to the court, he was operating under the assumption that an appeal had been filed because Garcia had told him that he would file an appeal. Cook specifically stated "I still believed that the appeal was filed at the time I sent a letter to the court. "

Defendant testified that he had no other contact with Garcia regarding the appeal or otherwise even after his sentence was reduced on February 20, 2012. By that time, however, Defendant had already filed the instant § 2255 motion.

Defendant testified that another inmate helped him file the 2255 motion.

The Government called Defendant's former counsel Armando Garcia as its only witness. Garcia testified that he had been in private practice from 2010 through 2012, and he now works for the state public defender's office. Because "the rule" had not been invoked, counsel was present during Defendant's testimony at the hearing. Counsel admitted that prior to the date of the hearing, he did not have a good

recollection of the facts surrounding Defendant's case, and that after hearing Defendant's testimony, his memory was only "somewhat" refreshed.

Counsel was asked about the unsigned letter of January 15, 2010. Garcia referred to the letter as a "draft" because it had neither a letterhead nor a signature. He volunteered that the letter had been prepared on the date indicated, and not in response to the § 2255. Garcia said that he provided the letter to counsel for the Government at the Government's request for the preparation of the response to the § 2255. Counsel said that this was a computer copy rather than a hard copy. He testified that he did not pull out a closed file and pull out a physical copy of the letter, but then said that he could not remember exactly how he provided the letter to the Government,[3] although the fact that the letter was unsigned suggests that this is what he did.

Garcia stated that he discussed the question of whether Defendant wished to appeal with his client at the courthouse after sentencing. Garcia did not recall Cook telling him that he wanted to appeal. Rather, counsel remembered telling Defendant that there was nothing to appeal. Garcia said that he did not think that it was a lengthy discussion, as the marshal typically takes defendants promptly to a holding area after sentencing.

Garcia said he did not remember whether he visited Defendant two days later. He said that he had hoped that sitting in court listening to Defendant testify would jog his memory in this regard, but it did not. He noted that the Federal Detention Center might have a record of whether he was there on the date in question, four years earlier.

When asked if it was his general practice to confer with his clients about whether they wished to appeal, Garcia responded yes, absolutely. He also admitted his familiarity with Judge Hinkle's courtroom practice of advising counsel how to handle determining and documenting their clients' desires with respect to appeals. Garcia said that he thinks Judge Hinkle's practice of instructing counsel to send a confirmation letter

---

[3]The Government's response was filed October 25, 2011 (doc. 77).

was initiated after this case, but he agrees that it is a good practice. He said that previously, he did not typically follow up with a letter.

Counsel reiterated in response to further questioning that he does not recall having met with Defendant at FDC Tallahassee. However, he stated that if he had met with Defendant he would have discussed the benefits or legality of filing an appeal when he received a lesser sentence than he could have had. Garcia said that in this case, in his judgment, it would have been unwise to appeal. He opined that because the court had "exercised its discretion in Defendant's favor," it was possible that the Government could cross-appeal. He said that in his opinion if a sentence is "within the court's discretion," it is a waste of resources to appeal. Garcia further noted that he does not like to file frivolous appeals.

Counsel testified that, generally, if a client asked him to appeal and he disagreed with the client's decision, he would try to dissuade the client, but that if unsuccessful, he would file the notice of appeal and follow through on it. He testified that he might move to withdraw from the appeal and that he had done this in maybe a handful of federal cases.

Garcia testified that he did not recall any phone calls from Defendant Cook asking about his appeal, or any inquiries about the status of appeal or requests for copies of appellate documents. He admitted that he had "vague recall of some legal materials being requested" but no specific recollection.

On cross-examination, Garcia testified that he was a sole practitioner in 2010, and that he had a single assistant to answer phones and put out mail. Defense counsel asked Garcia if he had the opportunity to retrieve the file, and counsel said that he did not recall if there was a notation in the file about a January 15, 2010, meeting with Defendant,[4] and that he does not recall the meeting. Garcia testified that if he met with Cook he would have billed the court, but immediately conceded that he may not have.

---

[4]In retrospect, it was not 100% clear that Garcia retrieved Defendant's old case file in preparation for this hearing. In any event, however, he did not bring the file with him or refer to its contents.

Garcia also stated that the meeting could have been noted on the CJRA voucher or it could have been excluded from billing. Based on this equivocal testimony, although the CJRA voucher could have proven that the meeting took place if counsel billed for the January 15, 2010, meeting, a failure to bill for the meeting would not have been probative.

When Garcia was specifically asked whether he had found a signed version of Government's exhibit 1 in his client file, Garcia responded "No. If I had, you would have that instead of the unsigned copy." Counsel admitted that his general practice was to keep a signed copy of correspondence in the file, although he had stated on direct examination that he did not used to follow up with a letter.

Garcia reiterated that he did not recall Cook saying he wanted to appeal, but that he absolutely did recall telling Defendant that they were not going to appeal because counsel was pleased with the outcome and did not want to risk a cross appeal. Garcia conceded that while he felt victorious, his client might not have felt the same victory.

Counsel repeated that he did not believe an appeal was warranted, and initially said that the judge's findings of fact in support of sentencing were "not appealable." He clarified that by saying that one could appeal and argue that there was no substantial competent evidence to support the district court's finding.

When asked if he was sure that Defendant told him that Defendant did not want to appeal, Garcia stated that he was sure Defendant agreed with him that there would be no appeal in this case. He admitted that the only thing he had to memorialize this purported agreement was the unsigned letter of January 15, 2010. He admitted it was possible that he did not send the draft letter, and that it was also possible that he did not go to meet with Defendant. Counsel also admitted that it was possible that he met with Defendant on January 15, 2010, and Defendant changed his mind about the appeal during that meeting, and that this could be a reason why the letter was drafted (possibly before the anticipated January 15, 2010, meeting) but was not retained in the physical file.

Garcia was asked about Defendant's letter to the court, specifically Defendant's representation that counsel said he would not send Defendant's legal materials to him while he was at the detention center. Garcia explained that such a practice would have been within the realm of normal for him, and that he might have declined to send the materials while Defendant was at the detention center for Defendant's own safety because he was attempting to cooperate. Garcia also noted that in his experience people request their legal materials even during the course of the proceedings, thus suggesting that Defendant's request for his materials was not inconsistent with Defendant's belief that the appeal was pending.

Counsel found his client to be an intelligent, likable, oriented, personable and impressive young man.

Findings of Fact

The court has carefully considered the testimony presented at the evidentiary hearing and reviewed the entire record in this case. After doing so, the undersigned concludes that Defendant Cook's recollection of the events in question was more credible. Nothing that counsel said or that the Government presented contradicted Defendant's position that he told counsel on January 15, 2010, at the FDC Tallahassee that he wanted counsel to appeal. Counsel's "draft" letter supports Defendant's assertion that there was a meeting on that date, despite counsel's inability to state with certainty whether such a meeting took place. Counsel's lack of recall of the January 15, 2010, meeting referenced in his letter was clear from his demeanor, and was in contrast to his clear recollection of his discussion with the Defendant on January 13, 2010, after sentencing.[5] Conversely, Defendant Cook had a clear recollection of his meeting and discussion with counsel about his desire to appeal two days after sentencing. Cook answered questions directly and did not change his answers even when he was asked

---

[5]The court need not determine whether there was a meeting of the minds on January 13, 2010, with respect to an appeal, because regardless of what occurred on that date, the court finds that Defendant subsequently communicated his desire to appeal to his appointed counsel within the time frame for filing this appeal.

Case Nos.: 4:09cr34/RH/CAS; 4:10cv565/RH/CAS

the same question in multiple ways. Nothing about Defendant's demeanor suggested that his recall was suspect or that he had fabricated his claim. The court need not determine whether there was a meeting of the minds immediately after sentencing on January 13, 2010, with respect to an appeal, because regardless of what may have occurred on that date, the court finds that Defendant communicated his desire to appeal to Garcia on January 15, 2010, which was within the time frame for filing this appeal. Whether inadvertently or intentionally, the record is clear that the notice of appeal was not filed. Therefore, Defendant is entitled to relief with respect to Ground One of his § 2255 motion, and he should be permitted to file an out of time appeal.

<u>Defendant's Remedy</u>

The proper procedure when an out of time appeal is warranted is: (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is fourteen days, which is dictated by Federal Rule of Appellate Procedure 4(b)(1)(A)(i). <u>United States v. Phillips</u>, 225 F.3d 1198, 1201 (11th Cir. 2000); <u>United States v. Parrish</u>, 427 F.3d 1345, 1347 (11th Cir. 2005); <u>United States v. Palacios</u>, 516 F. App'x 734 (11th Cir. 2013). Appointment of counsel will presumably also be warranted given Defendant's custodial status.

Defendant's remaining claim should be dismissed without prejudice to its reassertion, if appropriate, upon conclusion of his direct appeal. *See* <u>McIver v. United States</u>, 307 F.3d 1327, 1331 n.2 (11th Cir. 2002). An order granting a § 2255 petition, and reimposing sentence, will reset to zero the counter of collateral attacks pursued and will not render subsequent collateral proceedings "second or successive." <u>McIver</u>, 307 F.3d at 1332 (quoting <u>Shepeck v. United States</u>, 150 F.3d 800, 801 (7th Cir. 1998)).

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. Defendant's motion to vacate, set aside, or correct sentence (doc. 178) be **GRANTED** with respect to Ground One of his motion, and that the only remaining claim, Ground Two, be **DISMISSED without prejudice**.

2. Defendant's criminal judgment be vacated and the same sentence reimposed.

3. Counsel be appointed for the purpose of appeal (or at minimum to consult with Defendant with respect to his desire to appeal).

At Tallahassee, Florida, this 3rd day of February, 2014.


s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636;** United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).**